2022 IL App (1st) 200966

No. 1-20-0966

Opinion filed February 9, 2022

Third Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| ROBERT SEIFERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Appeal from the |
| v. | ) | Circuit Court of |
| | ) | Cook County. |
| SNECKENBERG THOMPSON & BRODY, LLP, | ) | |
| and EMILIE GLYNN KAPLAN, | ) | No. 17 L 632 |
| | ) | |
| Defendants-Appellees | ) | Honorable |
| | ) | Margaret Ann Brennan, |
| (Debra Duffy, as Trustee of the Debra D. Seifert | ) | Judge Presiding. |
| Living Trust, | ) | |
| | ) | |
| Appellant). | ) | |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises following the circuit court's dismissal of the underlying legal

malpractice action against defendants Sneckenberg, Thompson, & Brody, LLP, and Emilie Glynn

Kaplan (collectively, STB), for want of prosecution. The court dismissed the matter after the

original plaintiff, Robert Seifert (Robert), died during the pendency of the proceedings. The court

rejected separate motions brought by the Robert J. Seifert Trust (RJS Trust) and appellant, Debra Duffy (Debra), as trustee for the Debra D. Seifert Living Trust (Duffy Trust), to substitute as party plaintiff following Robert's death. The court denied the RJS Trust's motion on the basis that Robert brought the malpractice action as an agent for the Duffy Trust, and such agency did not transfer to his personal estate, the RJS Trust, after his death. The court denied the Duffy Trust's motion to substitute, which was presented to the court after the court entered the dismissal for want of prosecution, on the basis that the Duffy Trust failed to act with due diligence in prosecuting the cause of action. The circuit court also denied the Duffy Trust's motion to vacate the dismissal for want of prosecution.

¶ 2     On appeal, the Duffy Trust asserts that the circuit court abused its discretion in dismissing the case for want of prosecution where either the RJS Trust or the Duffy Trust had standing to pursue the legal malpractice action following Robert's death. Appellant contends that the circuit court's denial of the motion to substitute and subsequent dismissal foreclosed the proper plaintiff from being able to step in and vindicate its rights. STB asserts that because of defects in appellant's notice of appeal, this court lacks jurisdiction to consider the merits of this appeal. This court previously entered an order to consider STB's motion to dismiss the appeal pursuant to Illinois Supreme Court Rule 303(b) (eff. Jul. 1, 2017), along with our consideration of the case. STB also contends that the circuit court properly denied the motions from the RJS Trust and the Duffy Trust to substitute and did not abuse its discretion in entering and refusing to vacate the dismissal for want of prosecution.

¶ 3                                I. BACKGROUND

¶ 4                         A. The Underlying Malpractice Action

¶ 5    Robert's ex-wife, Debra, held title to a property located in Barrington Hills, Illinois (the Property). Pursuant to Robert and Debra's divorce decree, Debra owned the equity in the Property while Robert owned the debt. Debra entered into an agreement to sell the Property to Brian LeMay. Debra authorized Robert to act as her agent in the sale of the Property. The sale to LeMay fell through after a dispute arose between the parties regarding the amounts LeMay owed. LeMay filed suit against Robert, Debra, and the banks that held the mortgage on the Property. Robert and Debra retained STB to represent them against LeMay. The parties engaged in settlement negotiations after the bank informed the parties that it planned to initiate foreclosure proceedings on the Property. STB advised Robert and Debra to retain another attorney to represent them at the closing. The second closing fell through after LeMay refused to pay a fee to the title company. STB then advised Robert and Debra that a conflict of interest had developed and that STB would be withdrawing as counsel. LeMay eventually voluntarily dismissed his claims, and Robert and Debra dismissed their counterclaims. In March 2016, the bank initiated foreclosure proceedings against the Property. The parties entered into another settlement agreement that resulted in LeMay and Robert releasing their claims against each other and the Property being sold to a third party.

¶ 6    In January 2017, Robert filed a complaint against STB, alleging legal malpractice based on their representation during the dispute with LeMay. Robert brought the complaint "for himself and as property manager for the Debra D. Seifert Living Trust." Robert asserted that STB failed to "zealously pursue discovery," failed to file a counterclaim, and hid the health issues of the one of the firm's senior partners. Robert asserted that the attorney who handled their case, defendant Kaplan, pressured Robert to sign a settlement agreement that did not adequately protect his interests. Robert sought fees of more than $40,000 paid to STB during its representation and compensatory damages in the form of lost rent on the Property of more than $200,000.

¶ 7    After further pleadings, Robert eventually filed a second amended complaint adding additional background and factual allegations. In the second amended complaint, Robert represented that he was the "manager and agent" for the Duffy Trust, which owned the Property. Robert alleged that if STB had filed requests to admit during discovery, they would have discovered that LeMay's reasons for refusing to close on the Property were "specious." The gravamen of Robert's complaint was that STB allowed the lawsuit with LeMay to carry on for years, a period during which LeMay occupied the property, but did not pay rent. As a result, the Property was subject to foreclosure because the Duffy Trust relied on payments from LeMay to pay the Property's mortgage.

¶ 8    STB filed a third party complaint for contribution against attorneys Mark Becker and Charles Silverman. Silverman was representing Robert in the legal malpractice action against STB. The complaint was based on the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq.* (West 2016)) and alleged that, as Robert's successor counsel, Silverman could have refiled the claims against LeMay that Robert claimed were mishandled by STB. STB pointed out that the claims were voluntarily dismissed and therefore could have been refiled within one year. See 735 ILCS 5/13-217 (West 2018).

¶ 9    Silverman and Becker filed separate motions to dismiss the third party complaint. On May 3, 2019, the court entered separate orders disposing of the motions to dismiss. The court granted Becker's motion to dismiss the claims against him in the third party complaint. The court denied, however, Silverman's motion to dismiss. With regard to Silverman, the court found that were questions of fact as to when Silverman was retained by Robert that precluded dismissal of the third party complaint.

¶ 10                    B. Motions to Substitute and Dismissal for Want of Prosecution

¶ 11    Robert passed away on December 8, 2019. On December 17, 2019, the RJS Trust moved to substitute as party plaintiff. The motion was accompanied by an affidavit from Bonnie Pittenger, who represented that she was trustee of the RJS Trust, which was created in July 2017. Pittenger averred that Robert placed all of his property in the RJS Trust, including his claims in the current proceedings. Pittenger further averred that Robert directed her to manage the lawsuit on behalf of his estate and that his estate was entirely in the RJS Trust.

¶ 12    STB filed an objection to the motion to substitute, contending that Robert did not have any ownership interest in the Property and brought the legal malpractice action pursuant to the power of attorney granted to him by Debra. STB asserted that the claim did not therefore personally belong to Robert and was not his personal property to transfer to the RJS Trust. STB cited precedent stating that legal malpractice claims are not assignable and belong only to the party that was damaged as a result of the malpractice. See *Brocato v. Prairie State Farmers Insurance Ass'n*, 166 Ill. App. 3d 986, 989 (1988). STB maintained that when Robert died, his agency to direct the malpractice action expired and could not be passed to the RJS Trust. STB also asserted that the request for substitution was supported by a single affidavit and there were no trust documents, letters of office, or estate documents offered to support the averments in the affidavit.

¶ 13    On February 21, 2020, the circuit court entered an order denying the RJS Trust's motion to substitute. The court agreed with STB that legal malpractice actions are not assignable. The court observed that Robert brought the legal malpractice action pursuant to a power of attorney granted to him by Debra, the trustee of the Duffy Trust. The court found that when Robert died, his agency did not pass to the RJS Trust and in fact expired. The court found that the power to make decisions regarding the Property in the malpractice action "reverted to Debra Duffy as trustee

of the Duffy Trust." The court rejected the RJS Trust's argument that the Survival Act (Act) (755 ILCS 5/27-6 (West 2018)) permitted this cause of action to be continued by Robert's representative because the claim was not Robert's personal property that could be transferred to his estate.

¶ 14    On March 5, 2020, the RJS Trust filed a motion to reconsider the February 21 ruling. In the motion, the RJS Trust contended that it was a proper party because the legal malpractice also personally harmed Robert in the form of lost income from the Property.

¶ 15    On March 12, 2020, the circuit court denied the RJS Trust's motion to reconsider and dismissed the case for want of prosecution, "there being no party plaintiff."

¶ 16    On March 19, 2020, the Duffy Trust filed a motion to vacate the dismissal for want of prosecution and substitute as plaintiff. In the motion, the Duffy Trust noted that the circuit court previously ordered that the Duffy Trust was the correct party plaintiff. Attached to the motion was a "Permission to Represent & Conflict Waiver" signed by Debra. In the waiver, Debra indicated that she wished Silverman to represent her interests in the malpractice action.

¶ 17    STB once again objected to the motion to substitute, contending that the Duffy Trust did not attach any trust documents or letters of office necessary for the circuit court to grant the substitution of a new plaintiff. STB also pointed out that the "Permission to Represent & Conflict Waiver" form was not notarized and, therefore, was not sufficient for substitution of a new individual as plaintiff.

¶ 18    On August 27, 2020, the court denied the Duffy Trust's motion to vacate the dismissal for want of prosecution and substitute plaintiff "with prejudice." The court noted that it entered the dismissal for want of prosecution "in large part due to the fact that even after several months following [Robert's] dying as a result of cancer, which had been an issue throughout this case, there was still no proper plaintiff to pursue the action." The court observed that although there was

a preference to decide cases on their merits, plaintiffs had a responsibility to prosecute the case with due diligence. The court found that continuing the matter "would pose an unnecessary burden to the parties and would only stand to bog down the Court's docket."

¶ 19    That same day, plaintiffs filed a notice of appeal. In identifying the orders appealed from, the plaintiffs identified the August 27, 2020, order denying the motion to vacate the dismissal for want of prosecution and substitute the Duffy Trust as plaintiff, and the May 3, 2019, order denying Silverman's motion to dismiss the third party complaint for contribution.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, appellant contends that the circuit court erred in dismissing the case for want of prosecution and erred in denying the motions to substitute by both the RJS Trust and the Duffy Trust. Appellant asserts that either trust was a proper plaintiff and should have been permitted to substitute as plaintiff. Appellant also contends that the court erred in refusing to vacate its dismissal for want of prosecution for lack of due diligence in prosecuting the case when the Duffy Trust, the party the court recognized as the proper plaintiff, sought to substitute as plaintiff only one week after the court dismissed the case.

¶ 22                                  A. Jurisdiction

¶ 23    Before we can address the merits of appellant's claims, we must first determine whether this court has jurisdiction to consider all aspects of this appeal. STB previously filed a motion to dismiss the appeal pursuant to Illinois Supreme Court Rule 303(b) (eff. Jul. 1, 2017). In the motion, STB contended that the notice of appeal noticed two circuit court orders: the May 3, 2019, order and the August 27, 2020, order. Appellant asserted that those orders were directed at Silverman and the Duffy Trust, respectively. Appellant pointed out, however, that Robert was listed as the sole appellant. STB contended that the notice of appeal was therefore "facially invalid" because it

failed to properly list the appropriate appellants that were subject to the May 3, 2019, and August 27, 2020, orders.

¶ 24    This court entered an order holding the motion to dismiss pending the Duffy Trust obtaining leave of court to file an amended notice of appeal naming a living party as the appellant. Appellant filed an amended notice of appeal now naming "Debra Duffy as trustee of the Debra D. Seifert Living Trust" as the appellant and still listing the May 3, 2019, and August 27, 2020, orders as the orders appealed from.

¶ 25    Following the filing of the amended notice of appeal, STB filed a second motion to dismiss the appeal pursuant to Rule 303(b). STB asserted that the amended notice of appeal "*again* fails to properly list the appropriate appellant(s) that are subject to both the August 27, 2020[,] and May 3, 2019[,] orders." (Emphasis in original.) STB contended that the amended notice of appeal therefore did not confer jurisdiction on this court and the matter should be dismissed. This court entered an order that STB's motion to dismiss would be taken with the case.

¶ 26    In its response brief before this court, STB's argument changed somewhat in response to appellant's arguments on appeal. STB noted that despite including only the May 3, 2019, order and the August 27, 2020, order in the notice of appeal, appellant devoted much of its opening brief to discussing the court's February 21, 2020, and March 12, 2020, orders. Those orders denied the RJS Trust's motion to substitute, denied the motion to reconsider the denial of the motion to substitute, and entered the dismissal for want of prosecution. STB contends that we do not have jurisdiction to review those rulings because they are not included in the notice of appeal and do not relate to the final order from August 27, 2020. STB also asserts that those orders concerned the RJS Trust, which is a proposed plaintiff that is separate and independent from the Duffy Trust that is the party related to the August 27, 2020, order and the amended notice of appeal. STB

contends that we should therefore "ignore" any arguments related to the RJS Trust's motion to substitute. STB also asserts that although the May 3, 2019, order is referenced in the notice of appeal, appellant did not offer any arguments regarding that ruling in their opening brief; therefore, any issues raised with that ruling should be considered waived.

¶ 27 In response, appellant maintains that although the May 3, 2019, order was referenced in the notice of appeal, that order "is not at issue here, and was not argued in the opening brief." Appellant asserts that the August 27, 2020,[1] order "pertained to the question of whether the Duffy Trust could be substituted as party plaintiff." Appellant contends that by referencing this order in the notice of appeal, appellant was indicating "that the issue of standing, and the right to continue prosecuting the case, was being contested." Appellant acknowledges that the "better practice" would have been to list all of the orders pertaining to the RJS Trust, as well as the August 27, 2020, order, but asserts that the notice of appeal was sufficient to confer jurisdiction on this court and that failure to comply strictly with the form of the notice should not be fatal to its appeal.

¶ 28 Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) provides that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal. *People v. Lewis*, 234 Ill. 2d 32, 37 (2009). "The purpose of the notice of appeal is to inform the prevailing party that the other party seeks review of the trial court's decision." *Id.* The notice of appeal " 'should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the

---

[1]Appellant's brief actually refers to an order from August 20, 2020, but this appears to be a typographical error.

successful litigant of the nature of the appeal.' " *People v. Smith*, 228 Ill. 2d 95, 105 (2008) (quoting *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 229, (1991)). Consequently, " '[w]here the deficiency in notice is one of form, rather than substance, and the appellee is not prejudiced, the failure to comply strictly with the form of notice is not fatal.' " *Id.*

¶ 29    In this case, as noted, appellant identified only the orders from August 27, 2020, and May 3, 2019, in its notice of appeal. In the relief sought section of the notice of appeal, appellant indicated that it sought an order from this court "Vacat[ing] the Dismissal for want of Prosecution and Dismiss[ing] the Third-Party Complaint." Appellant concedes that the May 3, 2019, order is not at issue in this appeal, but asserts that by identifying the August 27, 2020, order, denying the motion to vacate the dismissal for want of prosecution and substitute the Duffy Trust as plaintiff, appellant adequately informed the appellee of the trial court rulings sought to be reviewed. Appellant essentially argues that the orders relating to the RJS Trust were steps in the "procedural progression" that led to the judgment specified in the notice of appeal. See *CitiMortgage, Inc. v. Hoeft*, 2015 IL App (1st) 150459, ¶ 8. Thus, even if those orders were not listed in the notice of appeal, we would have jurisdiction to review those orders because they can be said to relate to the judgment specified in the notice of appeal. *Id.* (citing *Neiman v. Economy Preferred Insurance Co.*, 357 Ill. App. 3d 786, 790-91 (2005)). That is because "[a]n appeal from a final judgment draws into issue all previous interlocutory orders that produced the final judgment." (Internal quotation marks omitted.) *Id.* Here, had the court not denied the RJS Trust's motion to substitute, it would not have entered the dismissal for want of prosecution. If the dismissal for want of prosecution had not been entered, the appellant would not have sought to vacate that order and sought to substitute as plaintiff. Accordingly, we find that the orders denying the RJS Trust's motion to substitute and the order entering the dismissal for want of prosecution were procedural

steps toward the final judgment of August 27, 2020. See *id.* "All three orders are integrally interrelated." *Id.* Accordingly, we find that we have jurisdiction to review the order denying the RJS Trust's motion to substitute and the order entering the dismissal for want of prosecution. See *id.* We therefore deny STB's motion to dismiss the appeal.

¶ 30                                    B. RJS Trust's Motion to Substitute

¶ 31    Appellant first contends that the circuit court erred in denying the RJS Trust's motion to substitute because, under the Act, legal malpractice claims can survive the death of the plaintiff and may be maintained by the decedent's representative. Appellant asserts that because of the malpractice, Robert's own assets were depleted and, therefore, the RJS Trust had standing to pursue to the claims in the complaint.

¶ 32    The Act provides:

"In addition to the actions which survive by the common law, the following also survive:

actions of replevin, actions to recover damages for an injury to the person (except slander

and libel), actions to recover damages for an injury to real or personal property or for the

detention or conversion of personal property, actions against officers for misfeasance,

malfeasance, nonfeasance of themselves or their deputies, actions for fraud or deceit, and

actions provided in Section 6-21 of 'An Act relating to alcoholic liquors'." 755 ILCS 5/27-

6 (West 2018).

Appellant contends, citing *Jones v. Siesennop*, 55 Ill. App. 3d 1037 (1977), that legal malpractice claims survive the death of the plaintiff and may be brought after the plaintiff's death by the plaintiff's representative. The decision in *Jones* was based on the rationale that where an estate that has been injured or depleted by the wrong of another, the estate should be compensated regardless of whether the *injured party* is living or not. *Id.* at 1041 (citing *McDaniel v. Bullard*, 34

Ill. 2d 487, 493-94 (1966)). This finding is consistent with the purpose of the Act, which is to serve as "the vehicle by which the cause of action *** survives the death of the *injured person* when the action would otherwise have abated at common law." (Emphasis added.) *National Bank of Bloomington v. Norfolk & Western Ry. Co.*, 73 Ill. 2d 160, 174 (1978). Thus, the operative determination is not whether a legal malpractice claim can survive the death of the plaintiff, but whether Seifert was an "injured person" under the Act. The circuit court found that Seifert was not the injured person and the cause of action did not survive his death so that it could be maintained by his representative because Seifert brought the action as an agent for the Duffy Trust, the owner of the Property and the party injured by the malpractice. We agree.

¶ 33    The Restatement (Third) of Agency section 3.07 provides that "[t]he death of an individual agent terminates the agent's actual authority." Restatement (Third) of Agency § 3.07(1) (2006); see *Bruntjen v. Bethalto Pizza, LLC*, 2014 IL App (5th) 120245, ¶¶ 82-83. Comment b to section 3.07 further provides that after an agent's death, "[t]he agent's actual authority is not transferrable to the agent's estate or heirs." Restatement (Third) of Agency § 3.07 cmt. b (2006). Thus, Robert would not be permitted to transfer his actual authority to maintain the lawsuit on behalf of the Duffy Trust to the RJS Trust.

¶ 34    Appellant asserts, however, that STB's alleged malpractice also personally damaged Robert, that his personal damages were transferred to his estate upon his death, and that the RJS Trust may therefore maintain the malpractice action. Appellant contends that Robert paid legal fees and would have seen a gain from the sale of the Property. However, the factual allegations of the second amended complaint demonstrate that Robert brought the action as "the manager and agent" for the Duffy Trust, which owned the Property. The closing agreement with LeMay that formed the basis of the malpractice action was between LeMay and Robert, but only in Robert's

capacity as an agent for the Duffy Trust, not personally. As the circuit court recognized, Robert was authorized to bring the action only based on the power of attorney granted to him by the Duffy Trust. Thus, once Robert died, the power to make decisions for the Property, including in the malpractice action, reverted back to the principal, the Duffy Trust, and its then-trustee, Debra. Indeed, appellant seemed to concede at oral argument that the RJS Trust was not a proper party plaintiff. Accordingly, we find that the circuit court did not err in finding that the RJS Trust was not a proper plaintiff and in denying its motion to substitute.

¶ 35                C. The Duffy Trust's Motion to Substitute and Dismissal for Want of Prosecution

¶ 36    Appellant next contends that the circuit court erred in (1) denying the Duffy Trust's motion to substitute, (2) entering the dismissal for want of prosecution, and (3) denying the motion to vacate the dismissal for want of prosecution. Appellant points out that, in denying the RJS Trust's motion to substitute, the circuit court explicitly stated that the Duffy Trust was the proper plaintiff. However, the court then denied the Duffy Trust's motion to substitute. Appellant asserts that the court abused its discretion in refusing to vacate the dismissal for want of prosecution where the Duffy Trust filed its motion to vacate the dismissal only one week after the court denied the RJS Trust's motion to reconsider and entered the dismissal.

¶ 37    STB responds that that the trial court properly exercised its discretion in dismissing the case for want of prosecution and in denying the Duffy Trust's motion to substitute. STB asserts that under section 2-1008(b) of the Code of Civil Procedure (735 ILCS 5/2-1008(b) (West 2018)), the Duffy Trust had 90 days after Robert's death was suggested of record to file its motion to substitute. STB maintains that the Duffy Trust filed its motion to substitute more than 90 days after Robert's death was suggested of record, and it was therefore untimely. STB also asserts that the circuit court did not err in denying the Duffy Trust's motion to substitute because the Duffy Trust

failed to offer any evidence that it had standing to pursue the malpractice action. STB contends that the Duffy Trust did not offer any supporting documentation in conjunction with its motion to substitute that showed that it had an interest in the Property.

¶ 38    We note that although STB raised similar arguments in the circuit court, the circuit court's order denying the Duffy Trust's motion to substitute and vacate the dismissal for want of prosecution indicated that it was based solely on the Duffy Trust's lack of due diligence. The court found that continuing the case would "pose an unnecessary burden to the parties and would only stand to bog down the Court's docket." We find this ruling overly harsh based on the circumstances presented. We first observe that courts should decide controversies on their merits where possible. See *Smith v. City of Chicago*, 299 Ill. App. 3d 1048, 1054 (1998) ("The underlying spirit of our system of civil justice is that controversies should be determined according to the substantive rights of the parties."); 735 ILCS 5/1-106 (West 2018) (the Code of Civil Procedure is to be liberally construed, "to the end that controversies may be speedily and finally determined according to the substantive rights of the parties").

¶ 39    Secondly, we fail to see a lack of diligence by the Duffy Trust. The record shows that the RJS Trust filed its motion to substitute on December 17, 2019. The circuit court denied the motion on February 21, 2020. In denying that motion, the court stated:

> "When [Robert] died, his agency power did not pass to [the RJS Trust] and in fact the agency expired. **** The power to make decisions regarding the property at issue in the Underlying Suit, including the present claim for malpractice, reverted to Debra Duffy as trustee of the Duffy Trust."

The RJS Trust filed a timely motion to reconsider that ruling two weeks later on March 5, 2020. The circuit court denied the motion to reconsider and entered the dismissal for want of prosecution

one week later on March 12, 2020. The Duffy Trust filed its motion to substitute only one week later on March 19, 2020, which the trial court denied five months later in August 2020.[2] Rather than suggesting a lack of due diligence, the record reflects that the Duffy Trust was merely waiting for the court to rule on the RJS Trust's motion to substitute and motion to reconsider. Although appellant wrongly believed that the RJS Trust was a proper substitute party plaintiff, the fact that they were ultimately incorrect does not suggest a lack of due diligence on the part of the Duffy Trust.

¶ 40    We recognize that courts possess the inherent power to dismiss actions for want of prosecution, and the determination of the existence of a lack of prosecution rests within the sound discretion of the trial court. *Prosen v. Chowaniec*, 271 Ill. App. 3d 65, 67 (1995). "However, a dismissal for want of prosecution is error unless the party has been guilty of inexcusable delay in prosecuting the suit." *Id.* Indeed, a dismissal for want of prosecution should be set aside where "satisfactory explanation of the apparent delay has been given, there has been no intentional or wilful [*sic*] disregard of any directions of the court and it does not appear that further postponement of the controversy on its merits would result in prejudice or hardship to any of the parties." *In re Marriage of Dague*, 136 Ill. App. 3d 297, 299 (1985).

¶ 41    Here, plaintiff's counsel indicated that the delay—to the extent that there was one—was based on obtaining Debra's assent to substitute as party plaintiff and sign the conflict waiver. The record does not reflect any intentional disregard of any directions of the court. In fact, the record shows that on February 25, 2020, the court entered an order continuing the case to March 12, 2020, for, among other things, "status on party-plaintiff." Before that court date, on March 5, the RJS

---

[2]We are cognizant of the delays caused in the circuit court by the Covid-19 pandemic during that period.

Trust filed its motion to reconsider. On March 12, the circuit court both denied the motion to reconsider and entered the dismissal for want of prosecution, seemingly denying appellant any further opportunity to provide status on a new party plaintiff. Nonetheless, the Duffy Trust filed its motion to substitute only one week later. Further, there is no indication that STB suffered or would suffer prejudice or hardship by continuing the litigation. STB does not allege such prejudice. Accordingly, we find that the circuit court abused its discretion in denying the motion to vacate the dismissal for want of prosecution and in denying the Duffy Trust's motion to substitute as party plaintiff on the basis that the Duffy Trust did not act with due diligence.

¶ 42     We further find that none of the arguments STB raises on appeal support the circuit court's judgment. STB contends that under section 2-1008(b) of the Code of Civil Procedure, a motion to substitute must be filed within 90 days of the plaintiff's death being suggested of record. STB asserts that by the time the circuit court entered the dismissal for want of prosecution on March 12, the matter had been pending for more than 90 days without a proper plaintiff.

¶ 43     First, we observe that STB did not raise this argument in the trial court, nor did the trial court rely on section 2-1008(b) in denying the Duffy Trust's motion. It is well-settled that arguments not raised in the trial court may not be raised for the first time on appeal. *Shell Oil Co. v. Department of Revenue*, 95 Ill. 2d 541, 550 (1983). STB has therefore waived any objection to the Duffy Trust's motion to substitute on the basis of section 2-1008(b)'s 90-day time limitation. *Susman v. North Star Trust Co.*, 2015 IL App (1st) 142789, ¶ 41 ("It is well established that issues not raised in the trial court are waived and may not be raised for the first time on appeal.").

¶ 44     Nonetheless, we would find STB's contention based on section 2-1008(b) of the Code of Civil Procedure (735 ILCS 5/2-1008(b) (West 2018)) unpersuasive. Section 2-1008(b) provides that "[i]f a party to an action dies and the action is one which survives, the proper party or parties

may be substituted by order of court." *Id.* The 90-day time limitation in that section appears directly after a discussion of a motion to substitute a party's personal representative if the person who brings the action dies, or if the person against whom the action has been brought dies. *Id*. This is the provision under which the RJS Trust sought to substitute, as the personal representative for Robert after his death. However, two paragraphs later, section 2-1008(b) provides:

> "No action brought for the use of another abates by reason of the death of the plaintiff whose name is used but may be maintained by the party for whose use it was brought in his or her own name upon suggesting the death of record and the entry of an order of substitution." *Id.*

This is the provision pursuant to which the Duffy Trust sought to substitute. Robert brought the action under his name for the "use" of the Duffy Trust, which owned the Property and was the party damaged by the alleged legal malpractice. Under section 2-1008(b), therefore, the action did not abate at Robert's death, and the real party in interest, the Duffy Trust, was permitted to file its motion to substitute upon suggesting the death of record. There is no indication that the 90-day time limitation applies to this type of substitution. Accordingly, we find that the 90-day time limitation of section 2-1008(b) is not a valid basis to affirm the trial court's ruling.

¶ 45    STB also asserts that the trial court did not abuse its discretion in denying the motion to substitute because the Duffy Trust failed to present any evidence that it was a valid trust or that it had a legal interest in the Property. STB contends that the Duffy Trust did not provide any trust creation documents or other documentation that supported the existence of the trust. These arguments are, in essence, a contention that the Duffy Trust lacked standing to substitute as plaintiff. This matter was discussed extensively at oral argument where STB contended that the

only evidence the Duffy Trust presented in support of its standing to maintain the action was an unverified conflict waiver signed by Debra.

¶ 46    It is axiomatic, however, that "standing is an affirmative defense that a *defendant* must plead and prove." (Emphasis added.) *Deutsche Bank National Trust Co. v. Estate of Schoenberg*, 2018 IL App (1st) 160871, ¶ 26 (citing *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 61). As such, the Duffy Trust did not have the burden to plead and prove standing; rather, it was STB's burden to plead and prove lack of standing. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494 (1988). A motion objecting to a party's motion to substitute as plaintiff is not the proper pleading to raise the affirmative defense of standing. Rather, controversies regarding standing are best resolved by motions for summary judgment, made after discovery, rather than on the pleadings. *Id.* The Duffy Trust's alleged failure to substantiate its standing is not a valid basis to support the circuit court's ruling on the motion to substitute.

¶ 47    Accordingly, we find that the circuit court abused its discretion in denying the Duffy Trust's motion to substitute and in refusing to vacate the dismissal for want of prosecution. We therefore remand the matter for further proceedings where the court will vacate the dismissal for want of prosecution and permit the Duffy Trust to substitute as party plaintiff.

¶ 48                                III. CONCLUSION

¶ 49    For the reasons stated, we deny STB's motion to dismiss the appeal, and we reverse the judgment of the circuit court of Cook County and remand the matter for further proceedings consistent with this order.

¶ 50    Reversed and remanded with directions; motion to dismiss appeal denied.

**No. 1-20-0966**

| | |
|---|---|
| **Cite as:** | *Seifert v. Sneckenberg Thompson & Brody, LLP*, 2022 IL App (1st) 200966 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-L-632; the Hon. Margaret Ann Brennan, Judge, presiding. |
| **Attorneys for Appellant:** | Charles Aaron Silverman, of Charles Aaron Silverman, P.C., of Skokie, for appellant. |
| **Attorneys for Appellee:** | Rebecca M. Rothmann, of Wilson Elser Moskowitz Edelman & Dicker LLP, of Chicago, for appellees. |